FEINBERG, Circuit Judge:
 

 Robert R. Carter appeals from a sentence imposed in February 1992, after a plea of guilty to one count of receiving unregistered firearms, in the United States District Court for the District of Vermont, Fred I. Parker, Chief Judge. The district judge sentenced Carter to 24 months in prison, two years of supervised release thereafter and a fine of $78,859.20. Although it turned out that this figure was based on an incorrect calculation of the cost of imprisonment and supervision, the judge refused to reduce the fine. We affirm the judgment of the district court.
 

 I.
 

 In March 1991, Carter pled guilty to receiving and possessing 87 unregistered machine guns in violation of 26 U.S.C. § 5861(d). Under the Sentencing Guidelines, the imprisonment range for Carter was 51 months to 63 months and the fine range was $10,000 to $100,000. The Guidelines also required the court to impose, subject to Carter’s ability to pay, an additional fine sufficient to cover the costs of
 
 *818
 
 imprisonment, probation or supervised release. U.S.S.G. § 5E1.2(i).
 

 Before the sentencing hearing, which was held on February 18, 1992, Carter moved in the district court for a downward departure from the guideline range. The court granted Carter’s motion, departed from the guideline range of 51 to 63 months and, as already indicated, imposed a prison term of 24 months followed by two years of supervised release. The court required the first year of supervised release to be served in home detention, specifically allowing Carter to leave home for purposes of employment. The judge gave several reasons for the downward departure, including Carter’s age (68), his lack of a prior criminal record and the judge’s belief that the offense was an aberration. The government offered no objection.
 

 After granting the downward departure, the court addressed the issue that is the subject of this appeal:
 

 I am going to ... impose a fine,
 
 which will represent the costs of imprisonment in this case,
 
 which we have calculated to be $78,859.20, that amount to be deferred in its payment until six months of the Defendant’s release from confinement, which will give an opportunity to liquidate various properties which he now owns to raise the money for the fine, (emphasis added).
 

 In response to a question by Carter’s counsel as to the amount of the fine, the court said:
 

 That is my calculation of the costs of ' confinement and supervision
 
 and other fines are waived,
 
 and you may take that up with the probation office as to the amount.
 
 That was my intention
 
 in any event, (emphasis added).
 

 As it turned out, the calculations used to arrive at the figure of $78,859.20 were based on a confinement period of 51 months, the low-end of the applicable range
 
 before
 
 the court granted a downward departure to 24 months; a calculation based on confinement for 24 months would have come to $41,130.20. Carter discovered the discrepancy shortly after sentencing and moved under Fed.R.Crim.P. 35(c) to have the fine reduced. The court refused, issuing on February 24, 1992, both a memorandum order confirming the $78,859.20 fine and a Statement of Reasons for Sentence. This appeal followed.
 

 II.
 

 In this court, Carter contends that his fine must be reduced to $41,430.20. Citing a number of our precedents, he argues that the district court’s “unambiguous” statement at sentencing that it waived all fines other than those necessary to cover the costs of incarceration, supervision and electronic monitoring prevails over the conflicting sentence contained in its subsequent written order. Carter also argues that the trial court did not have the authority to use Carter’s motion for correction of sentence pursuant to Rule 35(c) as a vehicle to change the sentence.
 

 In response to the first argument, the government contends that the February 18 sentence was not unambiguous, that when the district court said that it waived other fines it simply meant that the financial penalty assessed against Carter ought not to exceed $78,859.20; in other words, that all fines
 
 beyond
 
 that amount were waived. The court’s February 24 order, confirming its decision to impose a $78,859.20 fine, supports this interpretation:
 

 Defendant’s counsel is correct that at the time of sentencing the court imposed a fine in the amount of $78,859.20, on the basis of a sentence of 51 months in prison, followed by two years of supervised release, which was the sentence the court was contemplating before making a decision to grant the motion for downward departure. However, the court also found that having imposed a fine of $78,-859.20 that other fines would be waived. The court accepts defendant’s calculations in his motion to the effect that the cost of incarceration, supervision and electronic monitoring would total $41,-130.20. The remaining amount of $37,-729.20 is within the appropriate guideline range for a fine in this case and the court hereby REAFFIRMS its decision to impose a fine of $78,859.20, which the court
 
 *819
 
 believes is an appropriate total fine within the defendant’s ability to pay.'
 

 We agree with the government that the judge’s oral statements on February 18 were not “unambiguous,” so that the cases Carter relies on do not control. More fundamentally, the judge’s February 24 order makes clear that he did not regard that order as a change of sentence. Indeed, the total financial penalty imposed on February 24 was exactly the same as that imposed on February 18. The only difference is that one component of the original penalty, the fine, was increased from zero to $37,729 (an amount, as the judge noted, “within the appropriate guideline range for a fine in this case”), and the other component, the cost of incarceration, was decreased from $78,859.20 to $41,130.20. This is a change of allocation, not a change of sentence.
 

 In
 
 United States v. Young,
 
 932 F.2d 1035 (2d Cir.1991), we vacated a restitution order in a case in which the district court had stated at sentencing that it was withholding a fine in order to give priority to restitution (although it made no “assessment that the conduct in question did not merit financial sanctions”).
 
 Id.
 
 at 1038. In this court, the government conceded that the restitution order of $20,400 was invalid because it exceeded the $5,500 obtained in the offense of conviction. The government asked us to permit the district court, after we remanded the case for re-sentencing, to increase the fine in light of our invalidation of the restitution order. We granted the government’s request, stating that, “[ujnder these circumstances, [the district judge] should have an opportunity to determine whether to impose a fine, now that the restitution component has been invalidated.”
 
 Id.
 

 If the district court in
 
 Young
 
 could raise the fine component of a sentence when it lowered the restitution component, we see no reason why the district court in this case could not raise the basic component of the fine when it lowered the additional component of the fine covering the cost of Carter’s incarceration since, as in
 
 Young,
 
 the total amount of the penalty remained the same.
 

 Moreover, in an even more recent case we permitted a district judge on remand to reduce a fine to comply with a plea bargain, and impose imprisonment with respect to the same count for' which the fine would be reduced on the theory that a reduction in one component of a sentence permits an increase in another component. We noted that:
 

 [A]n increase in one component of a sentence, imposed following a successful challenge to another component of a sentence, is intimately related to the exercise of a sentencing judge’s authority to select an appropriate sentence. Though the prospect of increasing one component of the sentence creates an arguable deterrent to a challenge to another component that might be unlawful, we. think the legitimate purposes of sentencing counsel against an absolute rule barring all increases of any component after another component has been successfully challenged. The balance between affording the sentencing judge appropriate leeway to refashion a proper sentence and unduly deterring challenges to unlawful components of a sentence can best be struck by sensitive line-drawing between permissible and impermissible resentenc-ings.
 

 United States v. Bohn,
 
 959 F.2d.389, 394-95 (2d Cir.1992).
 

 The same theory applies to the present case. We think it entirely appropriate to permit the sentencing judge to exercise his discretion to increase the basic fine component with respect to the same offense for which the additional fine component covering the cost of incarceration was reduced; the total penalty was unchanged, the resulting fine was within the guideline range and the defendant’s ability to pay, and the recalculation created no risk of deterring future challenges to sentence components that might be based on mistaken calculations. Therefore, Carter’s first argument must fail.
 

 Carter also argues that the district court could not use Carter’s motion under Rule 35(c) for correction of sentence “as an opportunity to change its mind about the ap
 
 *820
 
 propriateness of the sentence.” As we view it, that is not what happened here. On February 24, the judge made clear that only fines over $78,859.20 were waived and that the total financial penalties remained unchanged, even though the internal allocation of the respective sums was altered. On the unusual circumstances of this case, we do not find any reversible error.
 

 The sentence of the district court is affirmed.